UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-00567-MOC

| | |
|---|---|
| **DEMITRI KENNETH MULLINGS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **MARTIN O'MALLEY,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Plaintiff's complaint for review of decision by the Commissioner of Social Security. (Doc. No. 1). In support of his complaint, Plaintiff filed a Social Security brief. (Doc. No. 9). Defendant filed a response brief, and Plaintiff filed a reply. (Doc. Nos. 17, 18). Having carefully considered the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

I.   **Administrative History**

A Social Security Administration Administrative Law Judge ("ALJ") found Plaintiff disabled and entitled to supplemental security income when he was a child in February 2006. In December 2018, after Plaintiff attained his majority, the agency conducted a redetermination review under the adult disability rules and concluded that Plaintiff was no longer disabled or entitled to benefits. After an August 2022 hearing, an ALJ found that Plaintiff ceased to be disabled on December 12, 2018. Plaintiff submitted an appeal request, which the Appeals

1

Case 3:23-cv-00567-MOC   Document 19   Filed 07/09/24   Page 1 of 9

Council denied. The ALJ's decision is thus the final decision of the Commissioner of Social Security ("Commissioner"). After the Appeals Council's denial, Plaintiff timely filed this action.

## II. Standard of Review

The Social Security Act limits judicial review of the Commission's final decision—here, the decision of the ALJ. 42 U.S.C. § 405(g). This Court's review is restricted to whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015); Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). The Court may not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court will defer to the Commissioner. Id. (internal quotation marks omitted).

To the extent that the ALJ's findings of fact are supported by substantial evidence, those findings are conclusive. Id.; Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The "substantial evidence" standard does not require "a large or considerable about of evidence," Pierce v. Underwood, 487 U.S. 552, 564–65 (1988), but instead "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). To satisfy the substantial evidence standard, the ALJ need only find "more than a mere scintilla" of support for the Commission's decision. Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2018).

### a. Sequential Evaluation

The Commissioner, through ALJs, uses a five-step process known as sequential review to determine whether a claimant is disabled. That process unfolds as follows:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)–(f). Here, Plaintiff assigns error primarily to steps two and three of the ALJ's sequential evaluation.

### b. The Administrative Decision

The ALJ applied the foregoing sequential evaluation—minus step one, which is not used when redetermining disability at age 18—to determine Plaintiff's disability status. (Doc. No. 6-2 at 18 (citing 20 CFR 416.997(b))). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: attention deficit hyperactivity disorder, depression, anxiety, and borderline intellectual functioning. (Id. 19).

At step three, the ALJ found that none of Plaintiff's impairments, or combinations thereof, met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 19–20).

At step four, the ALJ concluded that, given Plaintiff's residual functional capacity to perform a full range of work at all exertional levels with some nonexertional limitations, Plaintiff could perform his past work as a kitchen worker and cleaner. (Id. at 22, 28). The ALJ found that Plaintiff had the:

> residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember and/or carry out simple but not detailed or complex work; he can perform unskilled work of a routine and repetitive nature; he can maintain attention and concentration for at least 2-hour periods of time sufficient to carry out unskilled or simple work over the course of a normal workday for a normal work week; he can adapt to routine, infrequent workplace changes at a non-production pace, meaning no assembly line or conveyor-belt type jobs; he can tolerate occasional interaction with the public; and he can tolerate frequent but not constant interaction with coworkers and supervisors, meaning work not requiring teamwork for task completion or tandem work.

(Id. at 22).

### III. Discussion

Plaintiff first claims that the Commissioner's decision was not supported by substantial evidence because the ALJ did not include autism spectrum disorder ("ASD") among Plaintiff's impairments under step 2 of the sequential evaluation review. Plaintiff's challenge fails. The Commissioner's decision—that Plaintiff's impairments do not include ASD—is supported by substantial evidence.

Plaintiff maintains that the ALJ's severe impairment determination improperly discarded Dr. Hunter's May 2019 test results and diagnosis of ASD. Not so. The ALJ thoughtfully evaluated Dr. Hunter's diagnosis and opinion before determining that there were several issues with Dr. Hunter's ability to produce persuasive test results from his one-time evaluation of Plaintiff. (Doc. No. 6-2 at 22, 25–26). Plaintiff had earbuds in during most of his evaluation with Dr. Hunter, and Dr. Hunter did not instruct Plaintiff to remove them. (Id. at 25). Plaintiff was

somnolent during the testing, and his effort poor, with almost "vegetative" symptoms, which likely "underestimate[d] his maximum ability." (Id.). Moreover, Dr. Hunter's diagnosis is inconsistent with Plaintiff's other evaluations, as Dr. Hunter is the only provider to have diagnosed Plaintiff with ASD. The ALJ's explanation and conclusion that Dr. Hunter's evaluation had "little persuasive value" satisfies the substantial evidence standard. The Court is not at liberty to re-weigh the evidence and resolve conflicts between contrary physician opinions. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Plaintiff also complains that the ALJ's finding that Plaintiff did not meet a Listing under step three of the sequential evaluation review was unsupported by substantial evidence. Specifically, Plaintiff contends that he should have been found disabled under Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders, 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorders), and 12.10 (ASD). In fact, the ALJ thoughtfully examined the Listings and explained why Plaintiff did not meet the relevant criteria. That is enough for the Commissioner to satisfy substantial evidence review.

The ALJ found that Plaintiff did not meet the criteria for Listings 12.02, 12.04, and 12.06 because Plaintiff had no more than "moderate" limitations in the respective criterion areas. To satisfy these Listings' criteria, a plaintiff must establish an "extreme" or "marked" limitation on: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. (See 20 C.F.R. Pt. 404, Subpt, App'x 1 §§ 12.02, 12.04, 12.06). The ALJ, while acknowledging Plaintiff's limitations in these areas, credited evidence of Plaintiff's therapy sessions with Ms. Brown in 2020-2021 to affirm that Plaintiff's limitations were, at most, moderate. Specifically, the ALJ concluded from Ms. Brown, Plaintiff's counselor, that Plaintiff's was alert and oriented

with respect to area (1), cooperative and well-behaved with respect to area (2), attentive with respect to area (3), and able to care for himself independently with some assistance with respect to area (4). (Doc. No. 6-2 at 19–20). The ALJ's conclusion that Plaintiff does not meet the criteria for Listings 12.02, 12.04, and 12.06 is justified by substantial evidence that this Court cannot reweigh.

A plaintiff satisfies the criteria for Listing 12.05 if they have an "extreme" or "marked" limitation in one of the criterion areas discussed above, or "[s]ignificant deficits in adaptative functioning currently manifested by dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) . . ." (20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05A). As discussed above, the ALJ did not find that Plaintiff had an "extreme" or "marked" limitation in a criterion area. (Doc. No. 6-2 at 19–20). The ALJ further concluded that Plaintiff did not have "[s]ignificant deficits in adaptative function," in light of Plaintiff's ability to use a microwave oven, stay at home alone, and leave the home by himself. (Id. at 21). The ALJ's conclusion—that Plaintiff does not satisfy Listing 12.05—was thus supported by substantial evidence.

Plaintiff also failed to satisfy Listing 12.10 because, as discussed above, the ALJ found no extreme or marked limitations in the relevant criterion areas required of this Listing. (20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.10B); (Doc. No. 6-2 at 19–20).

Next, Plaintiff claims that the Commissioner's RFC assessment was not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ's RFC determination did not adequately account for Plaintiff's limited attention and concentration, ability to interact with co-workers and the public, and absenteeism. To prevail on appeal, Plaintiff must show that the ALJ's RFC did not account for these limitations, and that the ALJ's RFC was unsupported by substantial evidence. Plaintiff cannot carry this burden.

Plaintiff maintains that the ALJ's two-hour work limitation fails to account for Plaintiff's attention and concentration deficits, which Plaintiff contends are supported by the evaluations of Drs. Hunter and Thornton. (Doc. No. 9 at 23). But the ALJ accorded Dr. Hunter's evaluation little weight because of the ALJ' aforementioned concerns regarding Dr. Hunter's testing conditions. (Doc. No. 6-2 at 25–26). The ALJ likewise identifies problems with Dr. Thornton's testing conditions: specifically, Plaintiff was "uncooperative throughout," and Dr. Thornton was unable to view Plaintiff's facial expressions. (Id. at 24). By contrast, the ALJ noted that Ms. Brown's evaluation revealed no attention-related concerns. (Id. at 24). Nonetheless, the ALJ included multiple limitations related to concentration and pace, such as limiting Plaintiff to simple, routine, and non-production paced work. (Id. at 22).

Plaintiff also argues that he is unable to interact with members of the public and coworkers. (Doc. No. 9 at 23). Plaintiff again cites Dr. Hunter and Dr. Thornton's medical opinions, as well as Dr. Saad's finding that Plaintiff could not do a job that required "a lot . . . of supervisor interaction." (Id. at 23–24). The ALJ examined this evidence alongside Plaintiff's mother's testimony that he had no issue with making friends, and Plaintiff's testimony that he spent time with his girlfriend and participated in other activities. (Doc. No. 6-2 at 26). The ALJ also noted the absence of behavioral interventions in Plaintiff's individualized education plan. (Id.). The ALJ ultimately acknowledged Plaintiff's interpersonal limitations by including in the RFC that Plaintiff should only have occasional interaction with the public, and frequent, but not constant interactions with supervisors and coworkers. (Id. at 22–26).

Plaintiff further contends that the ALJ erred by not accounting for absenteeism in the RFC. (Doc. No. 9 at 24). Ultimately, however, the ALJ did not find a need for a limitation on absenteeism because she found that the record and Plaintiff's work history did not require one.

7

Case 3:23-cv-00567-MOC   Document 19   Filed 07/09/24   Page 7 of 9

(Doc. No. 6-2 at 23, 53). ALJs must only generally explain how they reconciled conflicting evidence, and ALJs err only when the reviewing court is "left to guess about how the ALJ arrived at [her] conclusions." Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019); Mascio 780 F.3d at 632, 637. Here, the ALJ's reconciliation of conflicting evidence is supported by adequate explanation.

Finally, Plaintiff complains that the ALJ's assessment of opinion evidence was erroneous. (Doc. No. 9 at 10–18). Specifically, Plaintiff contends that the ALJ erred in assigning little persuasive value to Drs. Hunter and Thornton's opinions, and significant persuasive value to Dr. Saad's. (Id.). But the ALJ thoroughly evaluated each opinion and ultimately found Dr. Saad's evaluation more persuasive. In addition to identifying the testing condition concerns that undermined Dr. Hunter and Dr. Thornton's evaluations, the ALJ explained her reliance on Dr. Saad's findings. Specifically, the ALJ noted that Dr. Saad's conclusions were based on a holistic review of Plaintiff's psychiatric testing from 2012 to 2015, available treatment records from 2017 to 2018, the consultative examination from 2018, and school records. Moreover, the ALJ noted that Dr. Saad's findings were consistent with extrinsic evidence including Plaintiff's counseling sessions with Ms. Brown, Plaintiff's mother's testimony, and Plaintiff's own testimony. (Id. at 26). Thus, the ALJ's analysis—and decision to credit Dr. Saad's evaluation over those of Drs. Hunter and Thornton—satisfies the substantial evidence standard. See Hays 907 F.2d at 1456 (noting that it is the ALJ's responsibility to resolve conflicting medical opinions, and the Court is not at liberty to reweigh the evidence).

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner is **AFFIRMED**;

(2) Plaintiff's request for remand to the Commissioner (Doc. No. 1) is **DENIED**;

(3) This action is **DISMISSED**.

(4) The Clerk is directed to terminate Doc. Nos. 9 and 17 to show them as no longer pending in accordance with this Order.

Signed: July 8, 2024

Max O. Cogburn Jr
United States District Judge